## John McTammany *vs.* Munroe Organ Reed Company & others.

Worcester.    October 2, 1891. — November 30, 1891.

Present: Allen, Holmes, Knowlton, Morton, & Barker, JJ.

*Contract in Writing — Specific Performance.*

On a bill in equity against a corporation for the specific performance of its agreement with the plaintiff to license him under certain letters patent, it appeared that, when the agreement was entered into, the defendant had the right to make and sell the patented article under a contract with the assignee of the patents, and employed the plaintiff as a travelling salesman; that such license, by the terms of the agreement in question, was to be operative only in the event of the defendant's abandoning its contract with the assignee, as it had a right to do, and was stipulated for by the plaintiff to protect him against such an abandonment while he was thus employed; that the contract between the defendant and the assignee was never abandoned, but had terminated, as well as such employment, by mutual consent; and that the plaintiff had suffered no damages from the defendant's neglect to give him a license. *Held,* that the bill could not be maintained.

Bill in equity, filed in the Superior Court, for specific performance. The case was reserved, by consent of parties, for the determination of this court, and appears in the opinion.

*C. T. Russell & A. H. Russell,* for the plaintiff.

*C. A. Merrill,* for the defendants.

Barker, J.    This is a bill in equity brought to enforce the specific performance of an agreement made by the Munroe Organ Reed Company to give the plaintiff a license under certain patents applicable to automatic musical instruments. The other defendants are holders of the patents by assignments taken with notice of the plaintiff's claim.

The case was reserved for our determination by the Superior Court, upon the pleadings and the master's report, and the objections and exceptions thereto. The exceptions to the master's report, however, were not argued, and were waived.

The agreement bears date May 13, 1887. The plaintiff had then long been occupied in inventing automatic musical instruments, that is, such as employ perforated music paper for controlling the production of sound, and was, and continued to be,

a partner with his brother, Alexander McTammany, in manu-
facturing such instruments and paper, and up to September 28,
1885, had assigned his patents for such inventions to Alexander.
On that date, Alexander agreed with the company, in considera-
tion of certain royalties, to be not less than $2,000 yearly, that
it should have the sole and exclusive right to manufacture and
sell musical instruments embracing any of the inventions secured
by his patents, and by any patents that he should acquire in the
future.   This exclusive right was to continue for the full term
of the patents, not exceeding twenty-seven years from the date
mentioned; but the agreement contained a further provision,
that, in case the company should desire wholly to discontinue
the manufacture of such instruments, it might at its own option
terminate the agreement by giving twelve months' notice in
writing of its intention of abandonment, and that upon such
termination all rights under the patents should revest in Alex-
ander McTammany.   On the same date, the plaintiff also agreed
with the company that he would without charge devote a rea-
sonable amount of his time, skill, and energy to the invention
of improvements on such musical instruments and the procuring
of patents on such inventions, and would convey to Alexander
all such inventions and patents, so that they might be included
in the terms of the company's agreement with Alexander.
Other provisions of these contracts are now immaterial.   From
September 28, 1885, to May 13, 1887, both contracts continuing
in force, the plaintiff had devoted a portion of his time to mak-
ing inventions as he had agreed, and a portion to the sale of
musical instruments made by the company.

On May 13, 1887, the company and the plaintiff made a new
arrangement, comprised in an agreement signed by both and in
a letter of the same date addressed to him by the company.
This agreement contains, among other stipulations, the contract
which he now seeks to enforce.   He agrees in substance to give
his time and personal services exclusively to the company as a
travelling salesman in the sale and introduction of the goods
manufactured by it, and in all ways for the establishment and
advancement of its trade and business interests; the company
agrees to relieve him of so much of his agreement of September
28, 1885, as is inconsistent with the devotion of his time to trav-

elling and the promotion of the company's business away from home, to pay all travelling and other expenses accruing in the conduct of the business, to pay him also one mill per running foot on all perforated music paper which the company shall sell during his employment, except that purchased from him or Alexander McTammany, and also to grant to him a license, up to the time of the termination of his employment, to manufacture, use, and sell to others to be used, automatic musical instruments, embracing all the inventions for which the company had obtained patents since September 28, 1885, or which it might acquire or have the right to acquire during the continuance of the agreement, "provided, however, that this license shall not be operative except in the event of the said Munroe Organ Reed Company, at their option, giving up or abandoning the agreement made by and between said corporation and Alexander McTammany, dated September 28th, 1885, as therein stipulated and provided."

The mutual intent and purpose of the parties in making this provision for the grant of a license, as found as a fact by the master, was to secure and protect him while absent as travelling salesman against an abandonment by the company of its agreement of September 28, 1885, with Alexander McTammany. In fact, no such abandonment occurred. The services of the plaintiff under the agreement and letter of May 13, 1887, terminated on May 19, 1888, by mutual consent, and the company has paid him in full compensation therefor all of the royalties due him under the letter. During the year in which he was employed as salesman he made no request of the company for a license under the agreement, but on October 8, 1888, requested it to execute a written instrument, which he presented, granting him a license for the benefit of Alexander McTammany under any patents which had come into its possession, in accordance with the agreement since September 28, 1885, but which license the instrument provided should not be operative unless the company should at any time fail or neglect to carry out the stipulations of its agreement of that date with Alexander McTammany. The company did not comply with this request, and it was renewed on December 5, 1888, and this bill filed on December 28, 1888. The company's agreement with Alexander McTammany contin-

ued in full force until April 21, 1890, when it was terminated by
the mutual consent of the company and Alexander, who then
released the company from all claims and demands under it.   On
October 6, 1888, the company, in pursuance of a vote of its
directors authorizing its treasurer to sell the patents then owned
by it pertaining to automatic musical instruments, sold to one
Stone certain patents acquired by it after September 28, 1885,
and on October 15, 1888, voted to cease the manufacture of such
instruments, except to complete and perform its obligations un-
der existing contracts, and since that time has been engaged in
the manufacture of organ reeds.   The bill alleges that the plain-
tiff has been damaged to the amount of $10,000 by the neglect
of the company to grant him the license; but the master finds
no proof of damages except the fact that some of the patents
under which he claims a license embrace valuable inventions.

It is plain that the only license to the plaintiff contemplated
by the agreement which he seeks to enforce would be one of
which he can now make no use.   By the terms of the proviso
quoted, the license was not to be operative except in the event
of the abandonment by the company of the agreement of Sep-
tember 28, 1885, between it and Alexander McTammany, as
therein stipulated and provided.   That event can never occur,
·since that agreement has been terminated by mutual consent,
upon terms presumably satisfactory to all parties, and without
an abandonment by the company.   In addition, the plaintiff, by
virtue of his partnership with Alexander McTammany, was him-
self virtually interested in that agreement, and may be presumed
to have shared in whatever consideration may have induced
Alexander to consent to its termination.   Whatever might have
been the plaintiff's right to ask for a specific performance of the
agreement if he had demanded and been denied a license while
his employment as travelling salesman continued, it would now
be idle to compel the defendants to grant him a license, which
by its terms must remain wholly inoperative and useless.

But the plaintiff contends that the intention of the parties
was that the licenses to him were to place him upon the same
footing with reference to the company's patents as with refer-
ence to his own, obtained while he was in the service of the
company, and which upon the termination of the contract were

to revest in Alexander, so that he could take up and carry on the business under them, and that he was to be put upon the same footing as to all inventions made or acquired by the company as if he had made them himself. A reference to the agreement shows that no such purpose was expressed, for the proviso carefully limits the event without which his licenses were not to be operative to the single case of an abandonment by the company as therein stipulated, and which the master has found did not occur, and which cannot now happen. In addition to this the master finds that the mutual purpose of the parties was a different one from that now claimed by the plaintiff, and one that has long since been fully answered. It is not necessary to consider whether this fact of itself would prevent the court from granting the relief asked for in the bill. It follows from the finding of the master that the plaintiff has sustained no damages.

There is accordingly no reason for affording him equitable relief.                    *Bill dismissed, with costs.*